UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:08-cv-109-JHM

DANA K. GRACE                                                                  PLAINTIFF

V.

ARMSTRONG COAL COMPANY, INC.                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Armstrong Coal Company Inc.'s ("Armstrong") motion to dismiss counts IV, V, VI, and VII of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [DN 14]. Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTUAL ALLEGATIONS

On January 24, 2007, Grace was hired as a Mining Operations Manager for Armstrong. His employment contract provided for additional compensation in the event that he was terminated without cause. During the course of his employment, Grace allegedly expressed concern to Armstrong's agents that "[Armstrong's] conduct might violate certain federal and state regulatory requirements concerning permits" and that there might be "possible safety violations regarding untrained/undertrained workers." (Am. Compl. ¶ 6). On May 13, 2008, Grace was fired by his direct supervisor, and

1

Armstrong's Vice President, Kenneth E. Allen. The letter from Allen stated that:

> [Y]our employment with Armstrong Coal Company and Armstrong Energy Inc. is being terminated. This action is begin taken as a result of your inadequate job performance.
>
> Your consistent negative attitude, along with the lack of employee confidence, leaves us with no other recourse but to terminate your employment with Armstrong Coal Company and Armstrong Energy, Inc. effective today May 13, 2008.

[DN 8, Ex. B].

Notwithstanding the reasons for termination outlined in this letter, Grace alleges, inter alia, that Armstrong (1) wrongfully discharged him for refusing to violate the law in the course of his employment; (2) defamed him by publishing the letter (or communicating its contents) to a co-worker; and (3) intentionally caused him significant emotional distress. Armstrong moves to dismiss these claims.

## II. STANDARD

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to [the] plaintiff[], accept all well-pled factual allegations as true and determine whether [the] plaintiff[] undoubtedly can prove no set of facts consistent with [his] allegations that would entitle [him] to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] complaint must

2

contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." Bredesen, 500 F.3d at 527 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007)).

### III. DISCUSSION

Defendant argues that Plaintiff's defamation, retaliatory discharge, and intentional infliction of emotional distress claims, as well as his request for punitive damages (counts IV, V, VI, and VII), should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. The Court considers the arguments in turn.

A. Defamation

A plaintiff must allege four elements to state a prima facie case of defamation: (1) defamatory language, (2) about the plaintiff, (3) that is published, and (4) causes injury to the plaintiff's reputation. Columbia Sussex Corp., Inc. v. Hay, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Where the "defamatory statement[] relat[es] to the conduct of employees" and is "necessary for normal corporate function," a plaintiff-employee must also show that the defendant-employer had actual malice or exceeded its qualified privilege. Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 796 n.55 (Ky. 2004).

In this case, Defendant contends that Plaintiff's defamation claim should be dismissed because "the complaint does not sufficiently allege the element of malice necessary to overcome Armstrong's qualified privilege as an employer to make defamatory statements relating to the conduct of its employees." (Defendant's Brief, p. 6). Plaintiff, on the other hand, argues that the claim should not be dismissed because he has

alleged that the Defendant had actual malice. The Court agrees with the Plaintiff.[1]

Malice is defined as either knowledge that the defamatory statement was false or reckless disregard for the statement's truth. New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964); McCall v. Courier-Journal & Louisville Times Co., 623 S.W.2d 882, 885 (Ky. 1981). In this case, it is clear that Grace has alleged malice because the complaint specifically states: "Defendant['s] defamatory statements were meant to create an unjustified pretext for its claim of termination without cause, and as such, were made recklessly and with indifference to the known actual truth. . . . [and with] actual malice." (Plaintiff's Amended Complaint, ¶¶ 10, 13). Accordingly, Plaintiff's defamation claim is not barred by Defendant's assertion of qualified privilege.

B. Wrongful or Retaliatory Discharge

Defendant next argues that Plaintiff has failed to state a claim for retaliatory discharge. Generally speaking, "[a]n employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by . . . a constitutional or statutory provision." Firestone Textile Co. v. Meadows, 666 S.W.2d 730, 731 (Ky. 1984) (quotation omitted). In Kentucky, courts also recognize claims for wrongful discharge where the reason for the termination was the

---

[1] There is some question whether a qualified privilege even applies here. In particular, it is not clear that the allegedly defamatory communication was "necessary for normal corporate function" because the identity of the third-party employee (and the context of that conversation) is as-of-yet unknown. However, because the Court finds that Plaintiff has clearly alleged malice, the question is irrelevant for purposes of resolving the present motion.

employee's (1) failure or refusal to violate a law in the course of his employment or (2) exercise of a right conferred by well-established legislative enactment. Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985) (adopting Suchodolski v. Michigan Consol. Gas Co., 316 N.W.2d 710, 711-712 (Mich. 1982).

Here, Defendant reads Grace's complaint as stating a claim for retaliation under the latter theory, i.e., the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment. Plaintiff disagrees. He claims that the alleged reason for his discharge was his failure or refusal to violate a law in the course of his employment. In reply, Defendant counters that the complaint cannot state such a claim because there is no allegation of any such refusal. (Defendant's Reply, p. 6). The Court agrees with the Plaintiff.

The language at issue is Grace's statement that he was terminated "substantially in retaliation for [his] expressed concerns that Defendant was violating regulatory and safety requirements." (Am. Compl. ¶ 11). At first blush, this "expression of concern" hardly seems synonymous with a "refusal" to violate the law. Construed broadly, however, Grace's allegation is sufficient to state a claim. Accordingly, Grace's wrongful discharge claim may proceed.

C. Intentional Infliction of Emotional Distress ("IIED" or "outrage")

Plaintiff also claims that Defendant's conduct toward him was outrageous and caused him severe emotional distress. In particular, Grace alleges that he suffered "severe emotional injury" because "Defendant intentionally and recklessly made false

5

statements concerning [him] to 'cover-up' its motive to keep [him] from raising concerns about regulatory and safety failures by Defendant." (Am. Compl. ¶ 12). Armstrong contends that Grace has failed to properly allege a claim for intentional infliction of emotional distress because (1) his outrage claim is precluded by his retaliatory discharge claim, and (2) Defendant's purported conduct is insufficiently outrageous as a matter of law to sustain liability. Because the Court agrees with Defendant's former argument, Plaintiff's IIED claim will be dismissed.

Kentucky considers the tort of outrage to be a "gap-filler." Rigazzio v. Archdiocese of Louisville, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993). This means that IIED is not a valid cause of action in Kentucky where the alleged conduct makes out a claim for another tort for which emotional distress damages are available. Id.; see also Banks v. Fritsch, 39 S.W.3d 474 (Kt. Ct. App. 2001) (holding that a directed verdict for defendant on IIED claim was proper where evidence did not support a finding that defendant intended only to cause plaintiff extreme emotional disturbance and plaintiff could theoretically recover emotional damages arising from false imprisonment, assault, or battery); Brewer v. Hillard, 15 S.W.3d 1 (Ky. Ct. App. 2000) (considering whether IIED claim should have been dismissed in favor of alternative and non-alleged assault and battery theories).

The result is that an IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts. See Carter v. Porter, 2008 WL 4911142, *5 (E.D. Ky. 2008) (dismissing IIED claim on

12(b)(6) motion because malicious prosecution claim would potentially allow damages for emotional distress); see also Taylor v. University Medical Center, Inc., 2005 WL 1026190, *3 (W.D. Ky. 2005) (dismissing IIED as a gap-filler tort while simultaneously granting summary judgment on all other tort claims); Cissell v. KFC Corp., 2007 WL 3227571, *2 (Ky. Ct. App. 2007) (affirming same). The sole exception is where the alleged "actions or conduct are intended *only* to cause extreme emotional distress in the victim." Brewer, 15 S.W.3d at 8 (emphasis added).

In McCoy v. RWT, Inc., Nos. 2003-CA-002177-MR, 2003-CA-002241-MR, 2005 WL 1593651 (Ky. Ct. App. July 8, 2005), rev'd on other grounds, 244 S.W.3d 44 (Ky. 2008), for example, a plaintiff sought to recover on theories of intentional infliction of emotional distress, defamation, and malicious prosecution. On a motion for summary judgment, the trial court dismissed the IIED claim as a "gap-filler." The Kentucky Court of Appeals affirmed, explaining that the "traditional torts [i.e., defamation and malicious prosecution] allow for the recovery of damages due to emotional distress . . . [t]hus, a claim for intentional infliction of emotional distress is inappropriate in the present case. . . . [where there is no allegation or] evidence that Burke acted with the sole intent to cause McCoy emotional distress." Id. at *5.

The same reasoning applies here. The facts underlying Grace's IIED claim are coterminous with the facts underlying his defamation and wrongful discharge claims, i.e., he alleges that it was outrageous for his employer to fire him in order to avoid safety and regulatory failures and to defame him by publishing fraudulent reasons for his termination

to his co-workers. Because emotional distress damages are available for the torts of wrongful discharge and defamation, Grace's IIED claim is inappropriate unless he has alleged that Armstrong took the above actions "only to cause [him] extreme emotional distress . . ." Banks, 39 S.W.3d at 481. Grace has made no such allegation. To the contrary, he contends that Armstrong took the alleged actions, at least in part, to "keep [him] from raising concerns about regulatory and safety failures by Defendant." (Am. Compl. ¶ 12). Accordingly, Plaintiff's IIED claim must be dismissed.

### D. Economic Loss Rule and Punitive Damages

Defendant contends that the Court should dimiss all of Grace's tort claims, and thus his request for punitive damages, pursuant to the economic loss rule. According to Armstrong, "there can be no dispute that under Kentucky law the Economic Loss Rule prohibits, as a matter of law, a plaintiff from bringing tort claims that are duplicative of its contract-based claims." (Defendant's Brief, p. 20). Armstrong therefore concludes that Plaintiff's practice of incorporating the "facts contained in Paragraphs 4-7" by reference in his contract and tort claims renders the tort claims duplicative for purposes of the economic loss rule. Id. The Court disagrees.

The economic loss rule has been adopted in some form in a majority of states. See Christopher Scott D'Angelo, The Economic Loss Doctrine: Saving Contract Warranty Law From Drowning in a Sea of Torts, 26 U. Tol. L. Rev. 591, 608 (1995). Generally speaking, the rule "prohibits purchasers of products from recovering purely economic damages under most tort theories." HDM Flugservice GmbH v. Parker Hannifin Corp.,

332 F.3d 1025, 1028 (6th Cir. 2003).  The Sixth Circuit and this Court have applied the rule in the belief that Kentucky courts would apply it. Miller's Bottled Gas, Inc. v. Borg-Warner Corp., 955 F.2d 1043 (6th Cir. 1992); see also Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 849 (6th Cir. 2002); Gooch v. E.I. Du Pont de Nemours & Co., 40 F. Supp. 2d 863, 874-75 (W.D. Ky. 1999).

However, the economic loss rule does not bar Plaintiff's tort claims here because the action involves a breach of an employment contract, not a contract for the sale of goods.  As Judge Heyburn has explained, "[v]irtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products [in order to] . . . . preserve the distinction between the remedies available under the U.C.C. and those available in tort." Louisville Gas and Elec. Co. v. Continental Field Systems, Inc., 420 F. Supp. 2d 764, 769 (W.D. Ky. 2005).  Kentucky has given no indication that it would extend the rule to contracts for services. Id. at 769 ("[Justice Keller's concurring opinion in Presnell Const. Managers, Inc. v. EH Const., LLC, 134 S.W.3d 575, 583 (Ky. 2004)] is not persuasive evidence that Kentucky courts will apply the economic loss rule to services.").  Accordingly, the Court finds that the economic loss rule does not apply.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

cc: Counsel of Record